UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| DUNNWOOD ACRES APARTMENTS, LLC, | ) | |
| IREMCO, INC. and SUE WOOD, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

The United States of America alleges as follows:

## NATURE OF ACTION

1. The United States brings this action to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act" or "FHA"). This action is brought on behalf of Donella Smith and her minor children, R.E., and D.H., under 42 U.S.C. § 3612(o).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3612(o).

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the United States' claims occurred there and because the Defendants reside there.

## THE PARTIES AND THE SUBJECT PROPERTY

4.  Dunnwood Acres Apartments ("the Subject Property") is a multi-family residential rental property complex consisting of approximately 193 units.  The units are located in separate buildings at different street addresses in Hazelwood, Missouri, in the Eastern District of Missouri.

5.  The units at the Subject Property are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

6.  Dunnwood Acres Apartments, LLC is a limited liability company organized under the laws of Missouri.  Its principal office address is 6577 Cortena Drive, Hazelwood, Missouri 63042.

7.  At relevant times, Dunnwood Acres Apartments, LLC owned the Subject Property.

8.  Defendant IREMCO, Inc. is a domestic corporation incorporated under Missouri law.  Its principal office address is 15510 Olive Boulevard., Suite 200, Chesterfield, Missouri 63017.

9.  At relevant times, IREMCO, Inc, managed the Subject Property on behalf of Dunnwood Acres Apartments, LLC .

10. At relevant times, IREMCO, Inc. employed Defendant Sue Wood ("Ms. Wood") as the on-site property manager at the Subject Property.  Ms. Wood was acting within the scope of her employment with respect to her actions described herein.

## FACTUAL ALLEGATIONS

11. Ms. Smith began living at the Subject Property in or about September 2016.  She resided in a two-bedroom apartment, located at 6568 Serenity Circle, Apartment D ("the Subject Unit").  Ms. Smith continued to reside at the Subject Unit until approximately March 2018.

12. At relevant times, Ms. Smith's minor children, R.E. and D.H., resided at the Subject Unit with Ms. Smith.  R.E. and D.H.'s father, Rasheed Elamin, was also a signatory to the lease and initially lived at the Subject Unit.  Mr. Elamin moved out of the Subject Unit in approximately December 2016.

13.  Some ground-floor units at the Subject Property are only accessible by paths with multiple steps, while other ground floor units and basement units have no more than one or two steps.

14. The Subject Unit has both north and south entrances.  The north entrance has nine steps leading up to the front door in addition to two other steps (one over a curb and another at the unit's threshold).  The north entrance is closer to the Subject Unit and, thus, was the entrance that Ms. Smith's family primarily used.  The south entrance is further from the Subject Unit and has five steps between the parking lot and the Subject Unit in addition to two steps (one over a curb and another at the unit's threshold).  Neither the steps at the north entrance nor the steps at the south entrance has a handrail.  The Subject Unit also has a north entrance from a patio, but there is no accessible path from the parking lot to the patio, which is situated at the top of a grassy hill.

15. The Subject Property has ground floor units and basement units that do not have steps leading to their entrances.  For instance, there are units at the Subject Property that only

3

have a single step into the unit from the parking lot curb and/or a single step at the threshold leading into the unit and do not require any other significant level changes to enter the unit.

16. R.E. is a person with a disability as defined by the FHA, 42 U.S.C. § 3602(h).

17. In or about February 2017, when R.E. was 12 years old, R.E. was diagnosed with a serious medical condition.  On or about February 16, 2017, R.E. underwent surgery. Between approximately February 16, 2017 and April 17, 2017, R.E. alternated between staying at a local hospital and staying at a rehabilitation center.

18. As a result of the surgery, R.E has substantial physical limitations, including a mobility impairment, a visual impairment, dizzy spells, and difficulty with balance.  Her disability substantially limits major life activities, including her ability to climb more than five steps.

19. In or about April 2017, Ms. Smith approached Defendant Wood in person and advised her that R.E. had undergone surgery that resulted in a significant mobility impairment. She apprised Ms. Wood that R.E. required a transfer to a more accessible unit than the unit the family was then living in.

20. In response, Defendant Wood stated that the Defendants did not have any units that did not have any steps at all and that there was nothing she could do to assist.  Defendant Wood did not mention the possibility that other units with fewer steps may become available in the future, or offer to discuss the possibility of finding a  different way to assist Ms. Smith's family.

21. Shortly thereafter, Ms. Smith went into Defendant IREMCO, Inc.'s management office to pay her rent.  While at IREMCO, Inc.'s office, Ms. Smith advised Tracy Wakelam,[1] an IREMCO, Inc. account supervisor, of R.E.'s serious medical condition and resulting disability, and of the family's need for a reasonable accommodation transfer to a unit with no steps or fewer steps.  Ms. Wakelam informed Ms. Smith that no such units were available at that time, but that IREMCO, Inc. would try to work with her to find a suitable unit.

22. For months following her release from the hospital, R.E. struggled with the steep steps that were required to access her home.  On at least three occasions after her release from the hospital, R.E. tripped and fell while trying to navigate the nine steps leading from the north apartment entrance to the parking lot curb without a handrail.  R.E. needed significant help from Ms. Smith to physically support her and guide her down the steps whenever she had to leave the apartment to attend medical appointments or go to school or anywhere else, or return to the apartment.

23. During the period after R.E.'s release from the hospital in April 2017, Defendants did not approve Ms. Smith's request to transfer to a different unit, nor offer to make any other accommodations to alleviate the difficulties R.E was having accessing the family's apartment.

24. On or around July 5, 2017, Ms. Smith obtained a letter supporting her request for an accommodation that was written by R.E.'s oncology social worker.  The letter, typed on the letterhead of Cardinal Glennon Children's Hospital ("Children's Hospital letter"), states in relevant part:

---

[1] Ms. Wakelam died on August 28, 2019.

> [R.E.'s] illness has significantly affected her mobility.  Due to her physical restrictions, it would be best for the family to have a ground floor apartment.  Any efforts accommodating this request would be greatly appreciated by both the family and [R.E.'s] medical care team.  Please contact me at [phone number] if additional information is needed.

25. On or about July 5, 2017, the social worker sent the Children's Hospital letter requesting a reasonable accommodation transfer on R.E.'s behalf to IREMCO, Inc. by facsimile.

26. On July 5, 2017, Henry Brown, a friend and neighbor of Ms. Smith, emailed Ms. Wakelam with the subject line reading, "Information from Donnella [sic] N. Smith." Relevant portions of the email state:

> Cardinal Glennon is donating support equipment to aid [R.E.'s] recovery and rehabilitation, Ms. Smith was informed that [R.E.] needed to be in an apartment that had all of the living quarters on one floor, and that the steps leading up to her current apartment located at 6568D Serenity Circle, represented a danger to [R.E.] and her recovery . . .

> Ms. Smith is asking that her rent not be increased, and if it is possible that she could move to an apartment that is on a lower or basement level, allowing her and her daughters to live without the danger of steps, giving [R.E.] the safety of a residence without the danger of steps.

27. Mr. Brown's July 5, 2017, email message provided the names and contact information of medical and social professionals for verification of R.E.'s treatment and needs, including R.E's optometrist, her oncologist at St. Louis University, her chemotherapist, and her pediatric social worker.

28. Within approximately one week of obtaining it, Ms. Smith and Mr. Brown jointly delivered the Children's Hospital letter to Ms. Wakelam in person at Defendant IREMCO, Inc.'s office.

29. On July 12, 2017, Ms. Wakelam responded by email to Mr. Brown's July 5, 2017, email with, "Thank you.  [T]here will be no rent increase.  I will need to discuss with Sue regarding the transfer."

30. In the months following the delivery of the Children's Hospital letter, Ms. Smith continued to request that Ms. Wakelam grant a reasonable accommodation transfer based on R.E.'s disability.  Ms. Smith visited Defendant IREMCO's, Inc.'s office numerous times and asked Ms. Wakelam for an update as to her reasonable accommodation request. After R.E. was released from the hospital in April 2017, Ms. Smith brought up her request with Ms. Wakelam in person approximately ten times during her residency at Dunnwood Acres.

31. Although Ms. Smith lived at Dunnwood Acres for close to a year after making her initial request for a reasonable accommodation, and she repeatedly reitered her request to Defendants, Defendants never granted her reasonable accommodation request.

32. Defendants did not engage in an interactive process to discuss ways to accommodate R.E.'s disability.

33. Defendants did not contact R.E.'s medical team to verify the basis for her reasonable accommodation request.

34. At relevant times, the Defendants had a written policy that governed requests by residents at the Subject Property to transfer to other units at the Subject Property based on medical need ("the Medical Transfer Policy").

35. The Medical Transfer Policy provided:

> Any tenant requests to transfer due to medical needs will be honored at time of written request.  A letter from the tenant's physician must be submitted with details of the type of accommodation required.  If there are no apartments available to meet those needs, the tenant may terminate Lease without penalty at any time to move to another property which can accommodate those needs.

36. During the time frame in which Ms. Smith was seeking a reasonable accommodation transfer, at least two units at the Subject Property that had five or fewer steps became available.  These units would have satisfied the specifications identified by R.E.'s social worker and physical therapist as meeting her impaired mobility needs.

37. Defendants did not offer these or any other units to Ms. Smith.  Instead, when apartments with fewer steps became available, Defendants approved applications from prospective tenants who subsequently moved in.  Defendants did not inform Ms. Smith that units that could have better met her daughter's needs were or would be available.  At one point, Defendants offered to release Ms. Smith from her lease as an "accommodation."

38. In August 2017, Ms. Smith renewed her lease while she waited for Defendants to grant her reasonable accommodation transfer request.  Ms. Smith wished to stay at Dunnwood Acres Apartments in order to remain in her daughters' school district, which accommodated R.E.'s needs, and to be able to access the family's support network at the Subject Property.  The Subject Unit was also close to both the emergency room that treated R.E. and Ms. Smith's place of employment.

39. In early 2018, Mr. Elamin insisted that R.E. leave the Subject Unit, in part because the unit was not suitable for R.E. due to her disability.  At that point, R.E. moved in with her father and never returned to the Subject Unit.

40. Ms. Smith's daughter D.H. suffered loss, emotional distress, anxiety, and fear resulting from her sister R.E.'s struggles to access the Subject Unit in the months following her surgery.

41. In or about March 2018, Defendants initiated a summary eviction proceeding against Ms. Smith alleging that she failed to pay rent.  Ms. Smith moved out of the subject unit at the end of March 2018.

**HUD COMPLAINT AND CHARGE OF DISCRIMINATION**

42. On or about April 5, 2018, Ms. Smith filed a timely complaint regarding the Defendants' actions with the U.S. Department of Housing and Urban Development ("HUD").

43. In accordance with 42 U.S.C. § 3610, the Secretary of HUD conducted and completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report.  Based upon the information gathered in the investigation, the Secretary, in accordance with 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe the Defendants violated the Fair Housing Act.

44. On September 30, 2019, the Secretary issued a Charge of Discrimination, in accordance with 42 U.S.C. § 3610(g)(2)(A), charging the above-named Defendants with engaging in discriminatory housing practices on the basis of disability.  Specifically, HUD's Charge of Discrimination charged the above-named Defendants with violating 42 U.S.C. §§ 3604(f)(2)(A), 3604(f)(2)(B) and (f)(3)(B) by refusing to grant Ms. Smith's medical transfer request.

45. On October 11, 2019, Ms. Smith elected to have the claims asserted in the HUD Charge resolved in a civil action filed in federal district court in accordance with 42 U.S.C. §

3612(a).  On October 15, 2019, the HUD Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court.

46. Following the Notice of Election, on October 17, 2019, the Secretary of HUD authorized the Attorney General to commence a civil action in accordance with 42 U.S.C. § 3612(o). The Defendants and the United States entered written tolling agreements on November 5, 2019, and January 9, 2020, extending the deadline for the United States to commence a civil action until February 25, 2020.

## FAIR HOUSING ACT VIOLATIONS

47. The allegations described above are hereby incorporated by reference.

48. By the actions set forth above, the Defendants have:

   a.   Discriminated in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2)(A) and (B); and

   b.   Refused to make reasonable accommodations in rules, policies, practices, or services, when such an accommodation was necessary to afford a person with a disability equal opportunity to use and enjoy her dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

49. As a result of the Defendants' conduct, Ms. Smith and her minor children R.E. and D.H. have been injured and are "aggrieved person[s]" as defined by 42 U.S.C. § 3602(i).

50. The discriminatory actions of the Defendants were intentional, willful, and taken in reckless disregard of the rights of others.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States requests that the Court enter an Order that:

a.  Declares that the Defendants' discriminatory conduct violates the Fair Housing Act;

b.  Enjoins the Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of them from:

    i.  Discriminating on the basis of disability, in violation of the Fair Housing Act;

    ii.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, Ms. Smith and her minor children R.E. and D.H. to the position they would have been in but for the discriminatory conduct; and

    iii.  Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future;

c.  Awards monetary damages to Ms. Smith individually and in her representative capacity on behalf of her minor children R.E. and D.H., in accordance with 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1); and

d.  Awards such additional relief as the interests of justice may require.

Dated: June 17, 2020

Respectfully submitted,

<table>
<tr><td></td><td>WILLIAM P. BARR<br>Attorney General</td></tr>
<tr><td></td><td><i>S/ Eric S. Dreiband</i><br>ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division</td></tr>
<tr><td>JEFFREY B. JENSEN<br>United States Attorney</td><td><i>S/ Sameena Shina Majeed</i><br>SAMEENA SHINA MAJEED<br>Chief</td></tr>
<tr><td><i>S/ Nicholas P. Llewellyn</i><br>Nicholas P. Llewellyn  MO43839<br>Assistant United States Attorney<br>Chief, Civil Division<br>Thomas F. Eagleton U.S. Courthouse<br>111 S. 10th Street, 20th Floor<br>St. Louis, MO  63102<br>Phone: (314) 539-7637<br>Fax: (314) 539-2287<br>Nicholas.Llewellyn@usdoj.gov</td><td><i>S/ Lori K. Wagner</i><br>Catherine A. Bendor<br>Deputy Chief<br>Lori K. Wagner NY2124857<br>Trial Attorney<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street, NE<br>Washington, DC 20002<br>Phone: (202) 305-3107<br>Fax:  (202) 514-1116<br>Lori.Wagner@usdoj.gov</td></tr>
</table>

Attorneys for Plaintiff
United States of America

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lori K. Wagner
U.S. Department of Justice,
150 M St. NE Washington, DC 20002
202.305.3107

## DEFENDANTS

DUNNWOOD ACRES APARTMENTS, LLC,
IREMCO, INC. and SUE WOOD

County of Residence of First Listed Defendant   St. Louis
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Patrick McLaughlin, Esq.
Spencer Fane LLP
1 North Brentwood Boulevard, Suite 1000,
St. Louis, MO 63105
314 863-7733.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
        Plaintiff

☐ 2   U.S. Government
        Defendant

☐ 3   Federal Question
        *(U.S. Government Not a Party)*

☐ 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
        Proceeding

☐ 2   Removed from
        State Court

☐ 3   Remanded from
        Appellate Court

☐ 4   Reinstated or
        Reopened

☐ 5   Transferred from
        Another District
        *(specify)*

☐ 6   Multidistrict
        Litigation -
        Transfer

☐ 8   Multidistrict
        Litigation -
        Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sections 3601-3631 (the Fair Housing Act, as amended)
Brief description of cause:
Discrimination on the basis of disability in violation of the Fair Housing Act.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
    UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
06/17/2020

SIGNATURE OF ATTORNEY OF RECORD
S/Lori K. Wagner, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
   United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
   Original Proceedings. (1) Cases which originate in the United States district courts.
   Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
   Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
   Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
   Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
   Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
   **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA , | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. |
| DUNNWOOD ACRES APARTMENTS,LLC,IREMCO,INC., and , SUE WOOD | ) ) ) |
| Defendants, | ) ) ) |

**ORIGINAL FILING FORM**

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY WHEN INITIATING A NEW CASE.**

☐ THIS SAME CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER _____ AND ASSIGNED TO THE HONORABLE JUDGE _____.

☐ THIS CAUSE IS RELATED, BUT IS NOT SUBSTANTIALLY EQUIVALENT TO ANY PREVIOUSLY FILED COMPLAINT.  THE RELATED CASE NUMBER IS _____ AND THAT CASE WAS ASSIGNED TO THE HONORABLE _____.  THIS CASE MAY, THEREFORE, BE OPENED AS AN ORIGINAL PROCEEDING.

☒ NEITHER THIS SAME CAUSE, NOR A SUBSTANTIALLY EQUIVALENT COMPLAINT, HAS BEEN PREVIOUSLY FILED IN THIS COURT, AND THEREFORE MAY BE OPENED AS AN ORIGINAL PROCEEDING.

**The undersigned affirms that the information provided above is true and correct.**

Date: 06/17/2020 _____          S/Lori K. Wagner, Esq. _____
                                                                     Signature of Filing Party

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. |
| | ) |
| DUNNWOOD ACRES APARTMENTS, LLC, | ) |
| IREMCO, INC. and SUE WOOD, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## [PROPOSED] CONSENT ORDER

## I.     INTRODUCTION

1.   Plaintiff United States of America filed this action to enforce the provisions of Title

VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act

of 1988, 42 U.S.C. §§ 3601-3619 ("the FHA").

2.   The United States filed this action on June 17, 2020, on behalf of Donella Smith ("Ms.

Smith") and her minor children, R.E., and D.H., in accordance with 42 U.S.C.

§ 3612(o).[1]

3.   The United States' Complaint alleges that, at all relevant times, Defendant Dunnwood

Acres Apartments, LLC, owned Dunnwood Acres Apartments ("the Subject Property"),

a multi-family residential rental complex consisting of approximately 193 units.  The

---

[1] Consistent with E.D. MO. L.R. 2.17, F.R.C.P. Rule 5.2, and Rule II(M)(b) of the Eastern District's
Electronic Case Filing Procedures Manual, initials are used in place of each child's name in this Proposed
Consent Order.

units are located in separate buildings at different street addresses in Hazelwood, Missouri, in the Eastern District of Missouri.

4.   The Complaint further alleges that Defendant IREMCO, Inc., ("IREMCO") operated and managed the Subject Property on behalf of Defendant Dunnwood Acres Apartments, LLC, and that IREMCO employed Defendant Sue Wood ("Ms. Wood") as the property manager of the Subject Property.  The Complaint alleges that the Defendants discriminated against Ms. Smith and her minor children, R.E., and D.H., because of R.E.'s disability by refusing grant Ms. Smith's request for a reasonable accommodation to transfer to a unit at the Subject Property with fewer steps, in violation of 42 U.S.C. § 3604(f)(2), and (f)(3)(B).

5.   On September 30, 2019, on behalf of Ms. Smith and her minor children, R.E. and D.H. ("Aggrieved Persons"), the United States Department of Housing & Urban Development issued a Determination of Reasonable Cause and a Charge of Discrimination based upon disability in violation of 3604(f)(2)(A), 3604(f)(2)(B), and 3604(f)(3)(B) of the Act.  On October 11, 2019, Ms. Smith timely elected to have the claims decided in federal court.  The parties entered into tolling agreements on November 5, 2019, January 9, 2020, April 17, 2020, May 8, 2020, and May 22, 2020.

6.   The parties agree that the claims against the Defendants should be resolved without further proceedings or a trial.  This Consent Order resolves the claims in the Complaint against the Defendants.

7.   The Defendants deny the allegations set forth in United States' Complaint.  Entering into this Consent Order does not constitute an admission of liability.

II.   **GENERAL INJUNCTION**

8.   The Defendants, their agents, their employees, and all others in active concert or

participation with them, are hereby enjoined from:

   a.   Discriminating in the rental of, or otherwise making unavailable or denying, a

dwelling to any renter because of a disability, in violation of 42 U.S.C.

§ 3604(f)(1);

   b.   Discriminating against any person in the terms, conditions, or privileges of rental

of a dwelling, or in the provision of services or facilities in connection with such a

dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2); and

   c.   Refusing to make reasonable accommodations in rules, policies, practices, or

services when such accommodations may be necessary to afford a person with a

disability an equal opportunity to use and enjoy a dwelling, in violation of 42

U.S.C. § 3604(f)(3)(B).

III.   **NONDISCRIMINATION POLICY**

9.   Dunnwood Acres Apartments, LLC and IREMCO (the "Corporate Defendants") attest

that they have posted and will continue to display in a prominent way at all properties

that Dunnwood Acres Apartments, LLC owns and/or manages and at all properties that

IREMCO manages signs no smaller than 11 inches by 14 inches indicating that all units

are available for rental on a nondiscriminatory basis.  The Corporate Defendants have

provided the United States with photographs of the signs described in this paragraph.

The Corporate Defendants agree to continue to display such signs in Dunnwood Acres

Apartments, LLC's leasing office; in IREMCO's main office, and in all IREMCO rental

offices; and in prominent locations on the premises of all  rental properties that the

Corporate Defendants own and/or manage as required by this paragraph throughout the term of this Consent Order.  11-by-14-inch posters that comport with 24 C.F.R. Part 110, including Department of Housing and Urban Development ("HUD") Form 928 or comparable signs, satisfy this requirement.

10.  The Corporate Defendants shall ensure that all new advertising for the rental units that they own and/or manage in newspapers, in telephone directories, on radio, on television, on the internet, or in other media, and all signs, pamphlets, brochures, rental applications, leases, and other promotional literature includes a fair housing logo, the phrase "Equal Housing Opportunity Provider," and/or the following sentences:

> "We are an equal opportunity housing provider.  We do not discriminate on the basis of race, color, religion, sex, disability, familial status, or national origin."

## IV.   REASONABLE ACCOMMODATION POLICY

11.  Within 30 days of the entry of this Consent Order, the Corporate Defendants shall draft a specific written reasonable accommodation policy ("the Policy") for receiving and handling requests for reasonable accommodations made by residents or prospective residents with disabilities at the Subject Property and at all other rental housing owned and/or managed by Dunnwood Acres Apartments, LLC ("the Policy").  The Policy shall comply with the requirements of 42 U.S.C. §§ 3601-3619 and all other applicable federal and state laws and shall include the following provisions:

   a.  A description of where and how the Corporate Defendants will accept and process oral and written requests for disability-related accommodations in rules, policies, practices, or services;

4

b.  A requirement that the Corporate Defendants fully document each request for a reasonable accommodation and the response thereto, and retain in their records copies of all written requests and decisions for the duration of this order;

c.  A requirement that, within 7 days of their receipt of each oral or written request for a reasonable accommodation, the Corporate Defendants shall, in writing, acknowledge receipt to each person making a request;

d.  A requirement that the Corporate Defendants notify each person requesting a reasonable accommodation in writing of the decision regarding their request within 14 days of the receiving the request.

e.  A requirement that, if the Corporate Defendants are unable to grant a reasonable accommodation as requested, before deciding to deny the request they shall engage in an interactive dialogue with the resident or prospective resident to determine whether the Corporate Defendants may be able to offer an alternate accommodation that would meet the needs of the requester;

f.  A requirement that the notification of any denial of a request include a detailed explanation of grounds for such denial;

g.  Notification that the Corporate Defendants will not impose any additional fees or costs on, or retaliate against, any person who has exercised his/her rights under the Fair Housing Act to make a reasonable accommodation request and, if applicable, to receive a reasonable accommodation; and

h.  A requirement that, in the event that a third party makes a request for a reasonable accommodation on behalf of a resident or prospective resident, the Corporate Defendants shall accept the request, inform the resident or prospective resident of

same, and provide an opportunity for the resident or prospective resident to adopt the request as his or her own under the Policy.

12. Within 30 days of the entry of this Consent Order, the Corporate Defendants shall provide a draft of the proposed Policy to counsel for the United States for approval. The United States shall respond to the Corporate Defendants' proposed Policy within 30 days of receiving it.  If the United States objects to any part of the Corporate Defendants' proposal, the parties shall have 30 days from the date the United States gives notice of its objection to resolve their disagreement.  If they are unable to do so, the parties shall submit the dispute to the Court for resolution.

13. The Corporate Defendants shall implement the Reasonable Accommodation Policy for Persons with Disabilities at the Subject Property and at all other rental housing owned and/or managed by Dunnwood Acres Apartments, LLC, within 14 days of approval by the United States or determination by the Court.  The Corporate Defendants may amend the Policy once it has been implemented only after receiving approval from the United States, or, if the United States denies such approval, upon order of the Court.

14. The Corporate Defendants shall keep written records of each request for a reasonable accommodation until six months after the expiration of this Order. These records shall include: (a) the name, address, and telephone number of the person making the request; (b) the date on which the request was received; (c) the nature of the request; (d) whether the request was granted or denied; and (e) if the request was denied, the reason(s) for the denial.

## V.    MANDATORY EDUCATION AND TRAINING

15.  Within 60 days of the entry of this Consent Order, the Defendants, including all
employees, officers, and agents of the Corporate Defendants who have management or
administrative duties with respect to the rental of housing at the Subject Property or at
any other rental housing owned and/or managed by Dunnwood Acres Apartments, LLC,
shall attend, at the Defendants' expense, a live or web-based training program regarding
the Fair Housing Act, including in particular the FHA's prohibitions against disability
discrimination.  The training shall be conducted by a qualified third party, approved in
advance by the United States, and unconnected to the Defendants, their employees,
agents, or counsel.

16.  If, during the pendency of this Consent Order, Defendant Wood ceases working at
IREMCO and assumes work in the residential property management field at a company
other than IREMCO before she completes the training described in Paragraph 15, she
shall notify counsel for the United States of her change in employment within 10 days
of ceasing work at IREMCO shall and attend a live or web-based training as required by
this Section within 60 days of assuming her new employment.

17.  Any new employees or agents who begin working with or for the Corporate Defendants
who will perform management or administrative duties with respect to the rental of
housing at the Subject Property or at any other rental housing owned and/or managed by
Dunnwood Acres Apartments, LLC, will attend fair housing training within 30 days of
the start of their employment.  Similarly, any employee or agent of the Corporate
Defendants who did not previously have management or administrative duties with
respect to the rental of housing owned and/or managed by Dunnwood Acres

7

Apartments, LLC, but assumes such duties will attend fair housing training within 30 days of the commencement of their new duties.  A live or web-based fair housing training that has been pre-approved by the United States and that is otherwise consistent with the requirements of Paragraph 15 is sufficient to satisfy the training requirement for persons described in this paragraph.  The Corporate Defendants shall bear the costs associated with this training.

18.   All persons required under Paragraph 15-17 to attend training shall, within 5 days of completing the training, certify that they have participated in the educational training program, and that they understand and acknowledge their duties and responsibilities under this Consent Order and the federal Fair Housing Act.  Such certification shall take the form of Appendix A to this Consent Order if they received such pre-approved training in-person, or Appendix B if they completed a pre-approved web-based training.

## VI.   REPORTING AND RECORD KEEPING

19.   The Corporate Defendants shall notify and provide documentation to the United States[2] of the following events within 10 days of their occurrence:

  a.   The adoption, in accordance with Part IV of this Consent Order, of the Policy;

  b.   The implementation of any change to the Policy;

---

[2] All documents, notices, communications, and other written materials required by this Consent Order to be sent to the United States shall be made by email and overnight delivery by private commercial carrier (*i.e.*, not the U.S. Postal Service).  Unless the United States informs the Defendant, in writing, of an alternative address, submissions shall be addressed as follows:  **Email:**  lori.wagner@usdoj.gov; and **Overnight Delivery:**  Attention:  Chief, Housing & Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 4 Constitution Square, 150 M St. NE, 8th Floor, Washington, DC, 20002, Attn: DJ 175-42-178.

c.  The completion by each person of an educational program required under Paragraphs 15-17 of this Consent Order by forwarding a completed certification in the form of Appendix A or Appendix B to this Consent Order;

d.  The posting of the Nondiscrimination Policy in accordance with Part IV of this Consent Order;

e.  The denial of a request for a reasonable accommodation by a resident or prospective resident of housing owned and/or managed by the Corporate Defendants, including the requester's name, address, and telephone number, the date of the request, the details of the request, and the written explanation provided to the requester for denying the request; and

f.  The making of any written or oral complaint against any of the Defendants regarding discrimination on the basis of disability, including a copy of the written complaint itself or a written summary of an oral complaint, and the name, address, and telephone number of the complainant.  The Defendants shall also promptly provide the United States with information concerning resolution of each complaint.

20.  The Corporate Defendants shall be responsible for sending to the United States semiannual compliance reports beginning six months after the entry of this Consent Order and continuing every six months thereafter, except that the final report shall be submitted 60 days prior to the expiration of this Consent Order.  The compliance report shall include: (a) copies of all advertising for rental housing owned and/or managed by the Corporate Defendants in newspapers, in telephone directories, on radio, on television, on the internet, or in other media published since the effective date of this

Consent Order or the submission of the prior compliance report; and (b) a list of all reasonable accommodation requests submitted to the Corporate Defendants by residents, prospective residents, or third parties since the effective date of this Consent Order or the submission of the prior compliance report, including the name and contact information of the requester, the property to which the request pertained, the date of the request, the nature of the request, and whether the request was granted or denied.

21. While this Consent Order remains in effect, the Defendants shall preserve all records relating to their obligations under this Consent Order.  Representatives of the United States shall be permitted, upon providing reasonable notice to the Defendants, to inspect and copy at reasonable times any and all records related to the Defendants' obligations under this Consent Order.

## VII.    RELIEF FOR DONELLA SMITH, R.E. and D.H.

22. Within 10 days of the entry of this Consent Order, the Defendants shall pay the total sum of $44,000 in monetary damages as follows:

a. By delivering to counsel for the United States a check payable to Donella Smith for $30,000.

b. By delivering to counsel for the United States a check payable to Donella Smith's daughter, R.E., an Aggrieved Person, in the amount of $9,800, which will be held in an individual interest-bearing bank account that will be available to her upon reaching the age of majority.

c.  By delivering to counsel for the United States a check payable to Donella Smith's daughter, D.H., an Aggrieved Person, in the amount of $4,200, which will be held in an

individual interest-bearing bank account that will be available to her upon reaching the age of majority.

23. Within 10 days of the entry of this Consent Order, the Defendants shall take steps, including, if necessary, the filing of a formal motion, which motion may note it is being filed with Ms. Smith's consent, to request that the court vacate the consent judgment entered against Donella Smith on March 27, 2018, in the Circuit Court of St. Louis County, Missouri, Case No.: 18SL-AC04798 (the "Circuit Court Judgment"). Defendants agree to waive all amounts that they claim Ms. Smith owes to Defendants relating to her tenancy at the Subject Property, including back rent, late fees, court costs, attorney's fees, penalties, and any interest that may have accrued.  In the event that the Circuit Court does not grant the motion to vacate the Circuit Court Judgment within 30 days of the date on which Defendants file it, the Defendants will file a satisfaction of judgment within 40 days of the date on which Defendants filed the motion to vacate and shall provide counsel for Plaintiff with a copy.  Additionally, regardless of whether the Circuit Court judgment is vacated, within 10 days of entry of this Consent Order, the Defendants shall file a motion, and may note it is with Ms. Smith's consent, to request that the Circuit Court raise to above level three the security level of the underlying rent and possession case that resulted in the Circuit Court Judgment under the Missouri Office of State Courts Administrator's Automated System Security Guidelines.  The Parties acknowledge that, notwithstanding Defendants' good-faith advocacy in their favor, the Circuit Court may not grant the motion to vacate or the request for the increased security level.

24.  As a prerequisite to receiving payment pursuant to Paragraph 22, Ms. Smith shall execute and deliver to counsel for the United States a release of all claims, legal or equitable, that she may have against the Defendants relating to the claims asserted in this lawsuit.  This release shall take the form of Appendix C to this Consent Order. When counsel for the United States has received the check, as required by Paragraph 22, from the Defendants and the original signed release from Ms. Smith, the United States shall deliver the check to Ms. Smith and the original signed release to counsel for Defendants.

## VIII.   JURISDICTION, DURATION, AND SCOPE

25.  The parties stipulate, and the Court finds, that the Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and under 42 U.S.C. § 3612(o).

26.  This Consent Order is effective immediately upon its entry by the Court, and shall remain in effect for three years from the date of its entry.

27.  The Court shall retain jurisdiction over this action and the parties thereto for the purpose of enforcing and modifying the terms of the Consent Order while the Consent Order remains in effect.

28.  The United States may move the Court to extend the period in which this Consent Order is in effect if the United States believes it is likely that the Defendants violated one or more terms of the Consent Order or if the interests of justice so require to effectuate the rights and obligations arising from this Consent Order.  This action and the Complaint shall be deemed dismissed with prejudice upon the expiration of this Consent Order.

29.  Any time limits for performance imposed by this Consent Order may be extended by mutual written agreement of the parties.

30. The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.  However, in the event the Defendants fail to perform in a timely manner any act required by this Consent Order or act in violation of any provision of this Order, the United States may move the Court to impose any remedy authorized by law or equity, including, but not limited to an order requiring performance or non-performance of certain acts and an award of damages, costs, and reasonable attorneys' fees that may have been occasioned by the Defendants' violation or failure to perform.

31. The Defendants acknowledge that the United States may take all steps it deems necessary to monitor the Defendants' compliance with this Consent Order.

32. The Corporate Defendants' obligations under this Consent Order shall extend to all rental housing that Dunnwood Acres Apartments, LLC owns and/or manages at present and/or while this Consent Order remains in effect.

33. If, at any time before the expiration of this Consent Order, Defendant Dunnwood Acres Apartments, LLC acquires a direct or indirect management or ownership interest in any residential rental property, such property shall become subject to the applicable provisions of this Consent Order.  Within 30 days of acquiring such an interest, Dunnwood Acres Apartments, LLC shall notify counsel for the United States of the nature of its interest in the dwelling or property, the address(es) of the property, and the number of individual dwelling units at the property.  Dunnwood Acres Apartments, LLC shall further provide a copy of the documents memorializing the transfer in interest within three business days of completing such a transfer.

34. If, at any time before the expiration of this Consent Order, Dunnwood Acres Apartments, LLC sells or otherwise relinquishes its interest in any property subject to this Consent Order to a bona fide, independent, third-party in an arms-length transaction,[3] that property shall cease to be subject to this Consent Order.  For purposes of this Paragraph, a "bona fide, independent, third-party" is one in which neither the Corporate Defendants nor their officers, members, executives, managers, partners, employees, subsidiaries, affiliates, or agents has any current or past financial, contractual, personal, or familial relationship.

35. If, at any time while this Consent Order remains in effect, Defendant Dunnwood Acres Apartments, LLC maintains that its obligations under this Consent Order have terminated or changed because it has sold or transferred its interest in any property subject to this Consent Order to a bona-fide third party in an arms-length transaction, the Corporate Defendants shall inform the United States within 30 days of such transaction and provide the date of the sale or transfer, copies of the sale or transfer documents, and the name(s) and contact information for the transferee.

36. If any transfer of interest in any property subject to this Consent Order is not an arms-length transaction, Defendant Dunnwood Acres Apartments, LLC shall remain jointly and severally liable, along with the transferee, for any violations of this Consent Order.

---

[3] For purposes of this Consent Order, "arms-length transaction" is defined as a transaction that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that transaction.  A transaction involving a corporate entity in which the Corporate Defendants, or any person related to the Corporate Defendants by corporate affiliation, are officers, members, executives, managers, partners, employees, subsidiaries, affiliates, or agents shall not be considered an arms-length transaction.

## IX.     COSTS OF LITIGATION

37.  Except as provided for in Paragraph 30, all parties shall be responsible for their own attorney's fees and costs associated with this action.

## X.      TERMINATION OF LITIGATION HOLD

38.  The parties agree that, as of the effective date of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described in the United States' Complaint.  To the extent that any of the parties previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described in the Complaint, they are no longer required to maintain such a litigation hold.  Nothing in this Paragraph relieves any of the parties of any other obligations imposed by this Consent Order.


**IT IS SO ORDERED**:

This _____ day of _____, 2020.


_____

**HON.**
UNITED STATES DISTRICT JUDGE

**For the United States of America:**


Dated: June 17, 2020


|  | ERIC S. DREIBAND |
|  | Assistant Attorney General |
|  | Civil Rights Division |

_S/ Nicholas P. Llewellyn_  |  _S/ Lori K. Wagner_
NICHOLAS P. LLEWELLYN | SAMEENA SHINA MAJEED
OFFICE OF U.S. ATTORNEY | Chief
111 S. Tenth Street | CATHERINE A. BENDOR
20th Floor | Deputy Chief
St. Louis, MO 63102 | LORI K. WAGNER
Phone: 314-539-2200 | Trial Attorney
Fax: 314-539-2777 | Housing and Civil Enforcement
Email: nicholas.llewellyn@usdoj.gov | Section
 | Civil Rights Division
 | U.S. Department of Justice
 | 950 Pennsylvania Avenue NW – 4CON
 | Washington, DC 20530
 | Phone: (202) 514-4713
 | E-mail: lori.wagner@usdoj.gov


**For the Defendants Dunnwood Acres Apartments, LLC, IREMCO Inc., and Sue Wood**

Dated: June 17, 2020


_S/Patrick T. McLaughlin_
Patrick T. McLaughlin, Esq.
Spencer Fane LLP
1 North Brentwood Boulevard, Suite 1000
St. Louis, MO 63105
Phone:  (314) 863-7733
E-mail:  pmclaughlin@spencerfane.com


16

## **APPENDIX A**

### **CERTIFICATION AND ACKNOWLEDGMENT**

I certify that on _____, 20___, I received _____ minutes of in-person training on the requirements of the federal Fair Housing Act.  I understand and acknowledge my duties and responsibilities under the federal Fair Housing Act and under the Consent Order entered in the case of *United States v. Dunnwood Acres Apartments, LLC, et al.*, No. _____(E.D. MO.).

_____
Signature

_____
Name

_____
Job Title/Position

_____
Date

## **APPENDIX B**

## **CERTIFICATION AND ACKNOWLEDGMENT**

I certify that on _____, 20___, I received _____ minutes of web-based training on the requirements of the federal Fair Housing Act.  I understand and acknowledge my duties and responsibilities under the federal Fair Housing Act and under the Consent Order entered in the case of *United States v. Dunnwood Acres Apartments, LLC, et al*., No. _____(E.D. MO.).

_____
Signature

_____
Name

_____
Job Title/Position

_____
Date

## APPENDIX C

**RELEASE OF CLAIMS**

In consideration of the parties' agreement to the terms of the Consent Order entered in *United States v. Dunnwood Acres Apartments, LLC, et al.*, No. _____(E.D. MO.) ("United States' Action"), and the Defendants' payment to me of $30,000, and the Defendants' payment to my minor children R.E. and D. H.,[4] of $9,800 and $4,200, respectively, for deposit into individual interest-bearing bank accounts that I will establish for their benefit, to be available to them upon their reaching the age of majority, I, Donella Smith, hereby release Defendants Dunnwood Acres Apartments, LLC, IREMCO, Inc., and Sue Wood (collectively, "Defendants"), and their agents, representatives, employees, affiliates, parent companies, subsidiaries, members, heirs, successors and assigns from any and all liability for any claims, legal or equitable, that I may have against them, individually or in my capacity as representative for my minor children, arising out of the claims brought in the United States' Action, or arising out of the facts underlying those claims as known on the date of the signing of this Consent Order by the parties, or from the previous rent and possession case filed against me in the Circuit Court of St. Louis County, Missouri, Associate Judge Division, bearing Case No. 18SL-AC04798.  I certify that I am legally authorized to accept the monetary relief provided by the Consent Order on behalf of R.E and D.H.  Further, I waive any claims that I may have against the United States, the Department of Justice, or its agents or employees, arising out of the United States' Action.  I hereby acknowledge that I have read and understand this Release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
Signature

_____
Name

_____
Address

_____
Date

---

[4]  The full names of the minor children will be included in the final version of the release provided for signature.